UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**JAMES SKIP CARL,**                   :
                                       :
            **Petitioner,**            :  **CIVIL NO. 1:CV-05-0353**
                                       :
        **v.**                         :  **(Judge Caputo)**
                                       :
**DAVID GOOD[1],**                     :
                                       :
            **Respondent.**            :

**M E M O R A N D U M**

## I.    Introduction

James Skip Carl, an inmate currently confined at the State Correctional Institution at

Huntingdon, Pennsylvania, filed this petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254.  He proceeds pro se and in forma pauperis in this matter.  In accordance with

United States v. Miller, 197 F.3d 644 (3d Cir. 1999), and Mason v. Meyers, 208 F.3d 313

(3d Cir. 2000), an order was issued advising the Petitioner that: (1) he could have the

document ruled on as filed, or (2) withdraw his petition and file one, all-inclusive § 2254

petition. Petitioner responded by submitting a Notice of Election in which he opted to have

his petition considered as filed.  A show cause order was issued and a response and

traverse were thereafter filed.  The petition is presently ripe for disposition, and for the

reasons that follow, will be denied.

---

[1] At the time Carl filed this petition, he was confined at the State Correctional
Institution at Cresson, Pennsylvania, and David Good was the Superintendent there at the
time.  Petitioner has since been transferred to SCI-Huntingdon and, as such, the proper
Respondent is David J. Wakefield, Superintendent at SCI-Huntingdon.

**II.**     **Factual and Procedural Background**

On September 5, 2002, following jury trial in the Lancaster County Court of Common Pleas, Carl was convicted on one count each of delivery of a controlled substance and criminal conspiracy.  He was sentenced to 7½ to 15 years imprisonment and a $50,000.00 fine.  A timely appeal was filed with the Pennsylvania Superior Court on October 18, 2002.  (See Commonwealth of Pennsylvania v. Carl, 1620 MDA 2002.) On February 25, 2004, the conviction and sentence were affirmed. Carl filed a petition for allowance of appeal to the Supreme Court of Pennsylvania on March 25, 2004, which was denied on August 31, 2004.  (See Commonwealth of Pennsylvania v. Carl, 227 MAL 2004.) Although Respondent states that Carl sought post-collateral relief pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, there is no evidence in the record that a PCRA petition was ever filed.[2]  The instant petition was filed on February 18, 2005.  A response to the petition was submitted on April 21, 2005 (Doc. 16).  Petitioner filed a traverse on May 6, 2005.  (Doc. 22.)

The relevant facts, as extracted from the Pennsylvania Superior Court's opinion on direct appeal, are as follows:

In January 1998, Detectives Gregory Macey, Eric Stouch, and

---

[2] Petitioner himself states that PCRA relief was not pursued.  Respondent states that a PCRA petition was filed and pursued through the appeal process.  Through computer-assisted research, the court accessed the full docket of Petitioner's underlying criminal proceedings in the Lancaster County Court of Common Pleas via http://ujsportal.pacourts.us.  There is no record of a PCRA petition having ever been filed.

The court notes that there are numerous additional factual inaccuracies in Respondent's Answer to the habeas corpus petition including the date of Petitioner's conviction, the dates pertaining to the direct appeal pursued by Petitioner in the Pennsylvania appellate courts, and even the date Respondent states Petitioner filed the instant action.  (Doc. 16 at 1-2.)

Jan Walters, and other members of the Lancaster County Drug Task Force began to investigate the activities of Frank Castrenze following receipt of an informant's tip that Castrenze was selling cocaine and that [Carl] was his supplier.  Working undercover, Detective Stouch made three separate purchases of cocaine from Castrenze on three days prior to January 28, 1998, and, on January 28, 1998, the detective went to Castrenze's home allegedly seeking to purchase cocaine. Castrenze left his residence briefly and returned with five ounces of cocaine for Detective Stouch to purchase.  Other members of the Drug Task Force then knocked, announced their presence, and entered Castrenze's residence to execute a search warrant and arrest Castrenze.

In an effort to obtain leniency Castrenze quickly named [Carl] as his drug supplier and offered to call him. With detective Macey listening in on another telephone extension, Castrenze called [Carl] and an incriminating conversation ensued wherein [Carl] advised Castrenze that he would be over shortly to pick up the money that Castrenze had received for the five ounces of cocaine that [Carl] had provided to him. As part of the investigation and pursuant to information they obtained from the three previous purchases of cocaine from Castrenze at his East Marion Street residence, the detectives obtained search warrants in anticipation of the sting operation for Castrenze's residence, [Carl's] residence, located at 685 Almanac Avenue, and [Carl's] blue Ford Taurus.  When [Carl] arrived at Castrenze's residence, the detectives immediately arrested him in front of the house.  Detective Macey advised [Carl] of his <u>Miranda</u> rights, listing ten specific rights contained on a card that Detective Macey carried with him at all times for that purpose. [Carl] waived his right to remain silent and advised Detective Macey that he wanted to speak with him and did not wish an attorney to be present.  Detective Macey then advised [Carl] that he had two anticipatory search warrants, one for [Carl's] vehicle and one for his residence.  At [Carl's] request, Detective Macey transported him to his home in order to execute the search warrant. The execution of the warrant on the residence yielded additional cocaine and drug paraphernalia; however, that evidence, later determined to be the product of an unlawful search, was not used in the prosecution at issue before us.

The record reveals that when they arrived at [Carl's] home, Detective Macey gave [Carl] <u>Miranda</u> warnings for a second time. [Carl] again specifically waived his right to remain silent and to have an attorney present.  The two sat down at the dining room table and Detective Macey administered [Carl]

3

Miranda warnings for a third time. [Carl] waived his rights again
and they began discussing the five ounces of cocaine that [Carl]
allegedly had provided to Castrenze.  Initially, [Carl] was not
willing to answer direct questions about his role in providing the
cocaine.  The following exchange, which reveals the extent of
[Carl's] hesitation in answering questions by police, as testified
to by Detective Macey at the suppression hearing, occurred:

> [DETECTIVE MACEY]: Okay.  What time did you bring
> the five ounces of cocaine to Frank's house.
> And he [Carl] responded, I'm not sure I want to answer that.
> At that point I asked him, okay, then we have nothing to talk about.
> And he said, can I go over an sit on the couch and watch the Sixers
> game.  There was a game on TV.
>
> And I said yeah, go ahead.
>
> At that point he walked over and sat on his couch and was watching
> the game.
>
> At that point I started conducting an inventory of all the evidence and
> I was pretty busy.
>
> At approximately 8:18 p.m., the same date, 23 January, '98, he asked
> to speak with me and he wants to tell the truth about everything.
>
> At first I had put him off a couple times.  And he continually asked me
> to speak with me [sic].
>
> And at that point I was busy and I really didn't -- I believed that I had
> enough evidence, I didn't really need any statement from him.
>
> At that point he continued.  And basically after I got done doing some
> inventory, I brought him back over to the table and I basically reminded
> Mr. Carl of his rights, again, and asked him if he still wanted to talk with
> me and he responded yes.
>
> I then followed up with, are your sure.  And he responded, yes, I do.
>
> [MR. BROWN]: Okay.  Did you, again, use the rights card that you
> used the previous two times?
>
> [DETECTIVE MACEY]: Yes.
>
> [MR. BROWN]: Go ahead with the transcription of the substance of

4

that conversation then.

[DETECTIVE MACEY]: Right after that it was okay, now tell me the truth, how much is Carlos bringing you.
And he responded, whatever I want.

And I responded, a kilo.

And he said, yeah, maybe.  I usually get five and five.  But they keep asking me to take more than five.  Five more.

[MR. BROWN]: Keep going.

[DETECTIVE MACEY]: So you could order up at least 15 ounces of cocaine.
And he responded, yeah, that would be no problem.

\* \* \*

Next question.  So what time did you take over the five ounces of cocaine to Frank today.

6:00, 6:30.

Next question.  How much were you going to charge Frank for it.

And he responded, $4700.

Next question.  I'm sorry.

$4700.

And I responded, damn, you're kidding.

And he responded, no.  How much was he charging you.

And I responded, $7,000.

(N.T. Suppression Hearing, 11/7/01, at 48-51).

Detective Macey described [Carl] as having been alert, a little nervous, but talking openly.  He further testified that when [Carl] initially told him that he was not sure he wanted to answer the question about what time [Carl] brought the cocaine to Castrenze's house he did not say anything about not wanting to answer any more questions at all. Detective Macey added that [Carl] did not state that he wanted

5

Detective Macey to stop talking about the cocaine and that he recalled administering [Carl] his <u>Miranda</u> warning in their entirety, one by one from the printed card.

[Carl] was not immediately charged with delivery of a controlled substance and conspiracy, but after Detective Macey, who had remained in close contact with [Carl] after the incident, lost contact with and could not locate him in the jurisdiction, [Carl] was charged with the offenses in February 1998.  Not until 2001, however, was [Carl] located in Georgia and brought back to Pennsylvania to face the charges.  In the interim, Lyndell Preston Coward, who shared a resident at Almanac Avenue with [Carl] was charged with possession of cocaine as a result of the detectives' execution of the anticipatory search warrant of the residence.  During that prosecution, however, the warrant for the residence was declared to be invalid as lacking in probable cause by the Honorable Lawrence Stengel of the Lancaster Count Court of Common Pleas and all drug possession charges brought against Coward as a result of drugs found in the Almanac Avenue residence were nolle prossed.

In his prosecution, [Carl] filed a suppression motion, arguing that his statements to police should be suppressed as a product of an illegal search of his residence because the anticipatory search warrant of his residence had been deemed insufficient by Judge Stengel in the prosecution of Coward. Following a suppression hearing on November 7, 2001, the suppression court denied the motion, finding that [Carl's] statements to police were not the product of the illegal search of his residence, and [Carl] proceeded to plead guilty to both charges on that day.  On January 29, 2002, however, the trial court granted [Carl's] motion to withdraw his guilty plea.

Following a jury trial before the Honorable Michael J. Perezous on September 4-5, 2002, [Carl] was convicted of both charges, sentenced to a $50,000 fine and 7½ to 15 years imprisonment, which was the mandatory minimum for a second drug trafficking offense pursuant to 18 Pa.C.S.A. § 7508(a)(3)(iii). . . .

(Doc. 16, Ex. C at 1-7, 2/25/04 Pa. Superior Court Op.)(citations omitted).

Petitioner raised six (6) issues on appeal to the Pennsylvania Superior Court. Two issues pertained to alleged trial court error in failing to suppress Petitioner's statement to police and in preventing Petitioner from calling witnesses to challenge the co-defendant's bias and/or motive.  Another ground challenged the verdict as against the sufficiency and/or weight of the evidence.  The remaining three grounds alleged the ineffectiveness of trial

counsel for (1) failing to call witnesses to attack the credibility of the detectives; (2) failing to object to the admission of the evidence of flight when there was no evidence that Petitioner had knowledge of the charges pending against him; and (3) failing to present evidence regarding the bookmaking activities of the co-defendant, where such evidence was relevant to exculpate Petitioner.  The Superior Court affirmed the judgment of sentence and a petition for allowance of appeal to the Pennsylvania Supreme Court was thereafter denied.

The instant petition was filed on February 18, 2005, and raises the following four (4) grounds: (1) conviction obtained by evidence obtained pursuant to an unconstitutional search and seizure; (2) conviction obtained by use of evidence obtained pursuant to an unlawful arrest; (3) conviction obtained by violation of privilege against self-incrimination; and (4) violation of due process by precluding Petitioner from calling witnesses.  (Doc. 1, Pet.)

## III.   **Standard of Review**

Section 2254 of Title 28, United States Code, provides that the district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  See 28 U.S.C. § 2254(a).  Properly presented, exhausted claims for relief that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2).  A

7

state court decision will be an "unreasonable application of" Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams v. Taylor, 529 U.S. 362, 408-09 (2000). However, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411.

Under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A habeas petitioner must rebut this presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S.322, 341 (2003). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. Discussion

### A. Exhaustion

Habeas corpus relief cannot be granted unless available state court remedies on the federal constitutional claims have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). This statutory provision has been interpreted to require the federal habeas petitioner to present both the facts and legal theory associated with each claim through "one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004). To satisfy this requirement, a petitioner must demonstrate that the claim raised was fairly presented to the state's highest court, either on

8

direct appeal or in a state post-conviction proceeding. <u>Lambert v. Blackwell</u>, 134 F.3d 506, 513 (3d Cir. 1997). In addition, the state court must be put on notice that a federal claim is being asserted. <u>Keller v. Larkins</u>, 251 F.3d 408, 413 (3d Cir. 2001).

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. <u>See</u> <u>Bronshstein v. Horn</u>, 404 F.3d 700, 707 (3d Cir. 2005); <u>Slutzker v. Johnson</u>, 393 F.3d 373, 379-80 (3d Cir. 2004). Nonetheless, while a prisoner's procedural default may excuse exhaustion, it does not automatically entitle him to federal court review of the merits of his claim. A federal court can reach the merits of procedurally defaulted claims only if the petitioner demonstrates either "cause and prejudice" in connection with the procedural default, or that a fundamental miscarriage of justice would result if his claim was not reviewed. <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451 (2000); <u>Wenger v. Frank</u>, 266 F.3d 218, 225 (3d Cir. 2001); <u>Lines v. Larkins</u>, 208 F.3d 153, 166 (3d Cir. 2000).

In the present case, Respondent initially contends that all but one of Petitioner's claims are unexhausted and procedurally defaulted. (Doc. 16, Answer to Pet. at 4-6.) However, Respondent states that because each of the issues presented by Petitioner are "fairly straightforward," the Commonwealth will address each claim on the merits. (<u>Id</u>. at 6.) As such, the Court construes Respondent's statement to be a waiver of exhaustion pursuant to 28 U.S.C. § 2254(b)(3), and will proceed to address each claim on the merits.

**B.     Merits of Petition**

**Admission of Evidence based upon Unconstitutional Search Warrant**

Petitioner first raises a Fourth Amendment argument.  He contends that during the execution of a search warrant at his residence, he was interrogated and made statements which were subsequently allowed to be introduced at trial.  He contends that the statements should have been suppressed as "fruits of the poisonous tree" where the underlying search warrant was declared invalid because it lacked probable cause.

In Stone v. Powell, 428 U.S. 465, 494 (1976), the Supreme Court held that, "where the State has provided an opportunity for a full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." "Even otherwise potentially meritorious Fourth Amendment claims are barred on habeas [review] when the petitioner had a full and fair opportunity to litigate them."  Deputy v. Taylor, 19 F.3d 1485, 1491 (3d Cir. 1994).

Generally, to avoid the Stone bar, a petitioner must demonstrate that he did not have a full and fair opportunity to litigate a Fourth Amendment claim because a structural defect in the state system prevented his claim from being heard.  Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002).  A petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure.  See U.S. ex rel. Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978); Petillo v. New Jersey, 562 F.2d 903, 906-07 (3d Cir. 1977).  Stone v. Powell precludes reexamination of the state court's determination that no Fourth Amendment violation occurred as long as there was a full and fair opportunity to litigate the

10

claim.  The Third Circuit Court of Appeals has concluded that a habeas petition had an opportunity for full and fair litigation where the state court provided an opportunity for a pretrial suppression motion and the Superior Court considered the claim on appeal. Reinert v. Larkin, 211 F. Supp. 2d 589, 597 (E.D. Pa. 2002), aff'd, 379 F.3d 76 (3d Cir. 2004), cert. denied, 546 U.S. 890 (2005).  Whether or not a state court incorrectly decided a Fourth Amendment claim is immaterial to the full and fair opportunity analysis. Marshall, 307 F.3d at 82; Gilmore v. Marks, 799 F.2d 51, 56 (3d Cir. 1986), cert. denied, 479 U.S. 1041 (1987).

In the instant case, Petitioner filed a suppression motion arguing, among other issues, that his statements to police should be suppressed as a product of an illegal search of his residence because the anticipatory search warrant of his residence had been subsequently deemed insufficient.  A suppression hearing was conducted on November 7, 2001.  One of the issues specifically addressed by the suppression court was whether Petitioner's statement obtained in his residence was the fruit of the illegal search at his residence and/or a Miranda violation.  (Doc. 16, App. Vol. 2, Ex. H, Suppression Hearing Tr. at 13.)  The suppression motion was denied.  On direct appeal one of the issues raised and addressed by the Pennsylvania Superior Court was whether the trial court erred in failing to suppress Petitioner's statement to police.  (Id., Vol. 1, Ex. C, 2/25/04 Pa. Superior Court Op. at 7-9).  Clearly, Petitioner had a full and fair opportunity to raise his Fourth Amendment claim in state court.  Consequently, his claim is barred under Stone and cannot serve as the basis for habeas relief.

### Admission of Evidence Pursuant to an Unlawful Arrest

Petitioner also raises another argument under the Fourth Amendment.  He contends that his conviction was obtained by the use of evidence obtained pursuant to an unlawful

11

arrest.  He argues that when he was arrested in front of his co-defendant's residence, the arrest lacked probable cause making any subsequent evidence obtained during the search of his vehicle and residence inadmissible.  He specifically challenges the admission of the incriminating statements made at his residence.

As discussed above, Fourth Amendment claims are not cognizable on habeas review unless the state courts denied Petitioner the opportunity for a full and fair litigation of the claims.  In this case, it is clear that Petitioner was provided an opportunity for full and fair litigation in the state courts of his challenge to the incriminating statements on the basis of lack of probable cause for the arrest.  Petitioner was provided with a pre-trial suppression hearing challenging the admission of his incriminating statements on the basis the statements were the fruits of an arrest allegedly made without probable cause as well as the fruits of the invalid search warrant.  (Doc. 16, App. Vol. 2, Ex. H, Suppression Hearing Tr. at 3-5, 32-36.) Further, on direct appeal, the Pennsylvania Superior Court specifically addressed the issue of whether the trial court erred in failing to suppress Petitioner's statements to police in the context of whether the arrest was made without probable cause.  In finding probable cause to exist for the arrest, the Superior Court stated as follows:

> Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonable trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.
>
> Probable cause justifying a warrantless arrest is determined by the "totality of the circumstances."  Where the facts and circumstances within a police officer's knowledge would warrant a person of reasonable caution to believe that an offense has

been committed, probable cause typically exists.

(Doc. 16, Vol. 1, Ex. C, 2/25/04 Pa. Superior Court Op. at 9-10.)  Based on the record, the court found that the testimony of Detectives Macey and Walthers at the suppression hearing indicated that Petitioner's arrest specifically arose from his role in the supply and delivery of the cocaine to co-defendant Castrenze, as revealed by Petitioner's telephone conversation with the Castrenze.  When arrested in front of the Castrenze's house, it was the result of the following events which immediately preceded his arrival there: Castrenze's sale of the cocaine to Detective Stouch, Castrenze's subsequent implication of Petitioner as his supplier, and Petitioner's telephone conversation with Castrenze about the delivery of the drugs and the receipt of the money, which Detective Macey overheard.  The Superior Court found that the totality of these incidents independently provided sufficient probable cause, separate and apart from the defective search warrant for Petitioner's residence, for Petitioner's detention and arrest.  (Id. at 10.)  Clearly, Petitioner had a full and fair opportunity to litigate his claim in the state courts and, as such, his claim is barred under Stone.

**Conviction Obtained by Violation of Privilege Against Self-Incrimination**

Petitioner next contends that his conviction was obtained in violation of his privilege against self-incrimination when his confessions to the police were made in violation of his Miranda rights.  The gist of his argument is that there was an interruption in the continuity of the interrogation that took place by police at his residence such that his earlier waivers of the Miranda warnings administered to him four times during the questioning were insufficient.

The Fifth Amendment provides, in part, that no person "shall be compelled in any

13

criminal case to be a witness against himself." U.S. Const. Amend. V.  The Fourteenth

Amendment incorporates the Fifth Amendment privilege against self-incrimination.  See

Malloy v. Hogan, 378 U.S. 1, 8 (1964).  In Miranda v. Hogan, 384 U.S. 436 (1966), the

Court held that "without proper safeguards the process of in-custody interrogation ...

contains inherently compelling pressures which work to undermine the individual's will to

resist and to compel him to speak where he would not otherwise do so freely."  384 U.S. at

467.  A confession taken during a custodial interrogation without the provision of Miranda

warnings violates the privilege against self incrimination.  See Thompson v. Keohane, 516

U.S. 99 (1995).  "To safeguard the uncounseled individual's Fifth Amendment privilege

against self-incrimination, the Miranda Court held, suspects interrogated while in police

custody must be told that they have a right to remain silent, that anything they say may be

used against them in court, and that they are entitled to the presence of an attorney, either

retained or appointed, at the interrogation."  Thompson, 516 U.S. at 107; see also Miranda,

384 U.S. at 479.

        The Miranda Court also outlined the procedures to be followed after the police

provide the warnings.  If the accused requests counsel, "the interrogation must cease until

an attorney is present."  Miranda, 384 U.S. at 474.  Miranda thus declared that an accused

has a Fifth and Fourteenth Amendment right to have counsel present during custodial

interrogation."  Edwards v. Arizona, 451 U.S. 477, 481 (1981).  These rights may be

waived, provided the waiver is voluntary, knowing and intelligent.  Miranda, 384 U.S. at

444.  In Edwards, the Supreme Court held that:

> [W]hen an accused has invoked his right to have counsel
> present during custodial interrogation, a valid waiver of that right
> cannot be established by showing only that he responded to

14

> further police-initiated custodial interrogation even if he has
> been advised of his rights.  We further hold that an accused . . .,
> having expressed his desire to deal with the police only through
> counsel, is not subject to further interrogation by the authorities
> until counsel has been made available to him, unless the
> accused himself initiates further communication, exchanges, or
> conversations with the police . . . .[I]t is inconsistent with
> Miranda and its progeny for the authorities, at their instance, to
> reinterrogate an accused in custody if he has clearly asserted
> his right to counsel.

Edwards, 451 U.S. at 484-85.  If the totality of the circumstances surrounding the

interrogation demonstrates that the defendant had the required level of comprehension, a

court may properly conclude that the waiver was knowing and intelligent.  While the

ultimate issue of whether a Miranda waiver is constitutionally valid is a question of law

requiring independent federal determination, factual questions decided by the state court in

determining whether a confession was given voluntarily, knowingly and intelligently, are

entitled to a presumption of correctness in federal habeas review.  Miller v. Fenton, 474

U.S. 104 (1985).  The Petitioner has the burden of rebutting the presumption of correctness

by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

In analyzing Petitioner's Fifth Amendment claim the Pennsylvania Superior Court

relied on the benchmark decisions of Miranda and Edwards.  The court further cited to the

Pennsylvania Supreme Court's holding in Commonwealth v. Hubble, 504 A.2d 168 (Pa.

1986) that the Edwards prohibition against all additional police-initiated conversation may

only be triggered by a clear and unequivocal invocation of the right to counsel by an

accused.  Under Hubble, if counsel is not actually requested, then the Edwards rule

prohibiting further questioning is not triggered.  This state law is consistent with established

federal law, as Edwards clearly speaks in terms of an accused clearly asserting/expressing

15

his desire to deal with police only through counsel.

With that said, the record demonstrates that at no time in this case did Petitioner specifically request counsel.  He was given and waived his <u>Miranda</u> warnings on three occasions while at his residence, and engaged in discussions with the police.  After the waiving his <u>Miranda</u> rights on the third occasion, Petitioner specifically spoke with Detective Macey regarding the five ounces of cocaine he allegedly had provided to Castrenze. Initially Petitioner was not willing to answer direct questions about his role in providing the cocaine.  The transcript of the suppression hearing reveals the following hesitation on Petitioner's part when asked what time he brought the cocaine to Castrenze's house when he said "I'm not sure I want to answer that."  (Doc. 16, App. Vol. 2, Suppression Hearing Tr. at 49.)  The resistence, however, was momentary and Petitioner thereafter initiated further conversation with Macey about the cocaine.  Petitioner was administered his Miranda warnings a fourth time following his reinitiation of conversation with Macey.  It was after that point that a confession to the involvement with the delivery of the cocaine was given.  The state court found that at no point did Petitioner invoke his right to counsel.

These findings of fact are supported by the record and are entitled to a presumption of correctness.  Petitioner has failed to present clear and convincing evidence sufficient to rebut this presumption.  There is nothing to suggest the state court decision was based on an unreasonable application of the facts in light of the evidence presented.  Nor was the court's decision contrary to established federal law.  Accordingly, habeas relief is not warranted on this claim.

**Violation of Due Process in Failing to Allow Petitioner to Call Witnesses**

Petitioner contends that the trial court erred in preventing him from calling witnesses to attack/testify to co-defendant Castrenze's bias/motive.  Specifically, he claims that he was prevented from calling two witnesses to impeach the credibility of Castrenze by introducing evidence regarding Castrenze's bookmaking activities, which Petitioner contends were actually the subject of "the deal" that Petitioner referred to in his telephone conversation with Castrenze and overheard by police on Castrenze's end.   Petitioner states that by not being allowed to offer the witnesses to demonstrate Castrenze's gambling business and debt owed to Petitioner, he was unable to show that the content of the telephone call was actually about payment for the debt, and not with regard to a drug transaction.  In response to the offer of proof made by defense counsel at trial, the court found the proposed testimony to be ". . . too ambiguous and too remote." (Doc. 16, App. Vol. 2, Tr. at 162.)

As a general rule, State evidentiary rulings do not implicate Federal law and are therefore not reviewable by Federal courts.  Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997); see also Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3d Cir. 1992).  Rather, such rulings are generally left to the discretion of the trial court.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  Thus, this court may review a State court's allegedly erroneous evidentiary ruling only if it was so egregious that it rendered Petitioner's trial fundamentally unfair, in violation of the due process clause of the Fourteenth Amendment or the compulsory process clause of the Sixth Amendment.  See Chambers v. Mississippi, 410 U.S. 284, 302-03 (1973).

In addressing this issue, the Pennsylvania Superior Court applied the correct

17

standard in analyzing Petitioner's claim noting that the admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion.  (Doc. 16, App. Vol. 1, 2/25/04 Pa. Super. Ct. Op. at 18.)  The court found that the record revealed the trial court's questioning of defense counsel with regard to the offer of proof in support for the court's finding that the testimony was too ambiguous and remote to be probative.  In addition, the Superior Court noted Petitioner's failure to demonstrate how the trial court's determination was legally in error.  Even if the trial court's evidentiary ruling could be found to be erroneous, abundant evidence was found to exist in the record to support Petitioner's conviction thereby making any error harmless.

Based on the record, it cannot be said that the state court's decision involved an unreasonable application of Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Even if it could be found that precluding the testimony of the witnesses was erroneous as a matter of State law, any such error did not deprive Petitioner of a fundamentally fair trial given the strong evidence against him which included the testimony of his co-defendant as to the contents of the phone conversation, as well as Petitioner's confession as to having committed the crime.

**V.    Conclusion**

For the reasons stated, the petition for habeas relief pursuant to 28 U.S.C. § 2254 will be denied.  An appropriate order follows.


Dated: November 20, 2007              /s/ A. RICHARD CAPUTO
                                      A. RICHARD CAPUTO
                                      United States District Judge

18

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES SKIP CARL,** | **:** | |
| | **:** | |
| **Petitioner,** | **:** | **CIVIL NO. 1:CV-05-0353** |
| | **:** | |
| **v.** | **:** | **(Judge Caputo)** |
| | **:** | |
| **DAVID GOOD,** | **:** | |
| | **:** | |
| **Respondent.** | **:** | |

**O R D E R**

  **AND NOW, THIS 20th DAY OF NOVEMBER, 2007,** in accordance with the

foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1.  The petition for writ of habeas corpus is **DENIED**.

2.  The Clerk of Court is directed to mark this case **CLOSED**.

3.  Based upon the court's conclusion herein, there is no basis for the issuance
    of a certificate of appealability.



        /s/ A. RICHARD CAPUTO
        A. RICHARD CAPUTO
        United States District Judge